In re COHEN.

(District Court, E. D. New York.   December 3, 1912.)

BANKRUPTCY (§ 415*)—DISCHARGE—CONCEALED ASSETS.

A special commissioner, appointed to take testimony on objections to a bankrupt's discharge, recommended a denial thereof on a finding, sustained by sufficient evidence, that the bankrupt had concealed assets by denying ownership of any interest in a store from which he was deriving his living. The commissioner's report was confirmed, with the reservation that, if any court of competent jurisdiction should determine that the property in the store was not that of the bankrupt, then an application for reargument of the motion might be made. *Held* that, neither the creditors nor the trustee having instituted any proceedings thereafter to subject the assets in the store to the debts of the bankrupt on the ground that they in fact belonged to him, and the bankrupt not having established that he had no interest in the store, the commissioner's report would be finally confirmed, and the discharge denied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–709, 719, 723–728; Dec. Dig. § 415.*]

In Bankruptcy.   In the matter of bankruptcy proceedings of Irving Cohen.   On application for the bankrupt's discharge.   Denied.

Abraham A. Silberberg, of New York City, for objecting creditor.
Benjamin Rich, of New York City, for bankrupt.

CHATFIELD, District Judge.   A special commissioner has previously reported that the bankrupt should be denied a discharge. This was based upon a hearing of the witnesses, and the various specifications of objection were dismissed, except one in which the bankrupt was charged with having concealed his assets by denying ownership "of an interest (amount unknown)" in a store which he was managing, and from which he was deriving his living, on New York avenue, Clifton, Staten Island.

The testimony shows that this crockery store had belonged to the bankrupt's father, and had been taken over by the bankrupt's brother, who had been conducting several stores for a number of years in the same neighborhood.   The bankrupt had been in partnership with a man named Phillips, who is said to have sold out the stock of goods (shoes) and to have disappeared, and is claimed by the bankrupt to be considered dead by his relatives.

The bankrupt claimed that he received none of the proceeds from Phillips, that they had no books, and that he never had any accounting; in other words, that he was cheated by Phillips before Phillips disappeared.   Shortly after, the brother, who owned these various stores, and who had purchased a horse and wagon by assuming the obligation of paying for them for the bankrupt, says he put the bankrupt in charge of the store about which the question has arisen, and all of the proceeds and benefits from the store were received by the bankrupt, who seems to have deposited money and obtained checks through some other party.   The brother's checkbook did not show any plain record with relation to this store.   When the report recom-

mending denial of discharge came up for confirmation, this court made the following memorandum:

"This report should be confirmed, but if it shall be (by any court of competent jurisdiction) determined that the property in the Clifton store is not that of the bankrupt, then an application for reargument of this motion may be made.

"March 5, 1912."

The papers show that since this decision the trustee has been discharged, that the year has elapsed within which creditors might prove claims, and that no creditor, nor the trustee himself, attempted in any way to reduce to possession any assets of the bankrupt or to obtain possession of the property in the store, which the special commissioner considered was really the property of the bankrupt, and was being concealed by him with his brother's help from the trustee in bankruptcy.

It was the intention of the court to safeguard the bankrupt in case any claim against the so-called concealed property should be disposed of in favor of the bankrupt. The creditors who had proved claims had the right, through the trustee or upon application to the court, to endeavor to obtain payment of their claims out of the concealed property. This they have not done, and the trustee has not seen fit to proceed on behalf of these creditors. The bankrupt, therefore, is in the same position in which he was at the time of the previous hearing, and the only thing to be considered is whether or not the report of the special commissioner was based upon any testimony which would justify his decision.

This court should not decide that issue from a consideration of the motives of the creditors or the trustee in deciding not to follow up the so-called concealed assets. If the bankrupt had been denied his discharge, and then been held free from wrongdoing with respect to the "concealed" property, this court might not be able to restore the situation to its previous condition. But nothing has occurred which affects the previous determination of the motion, and, as there was sufficient testimony upon which to base the special commissioner's finding, the report should now be confirmed.

Discharge will be denied.